IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01704-RBJ-MJW

JOHN H. COOK,

Plaintiff,

v.

DARLENE MCINNIS,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 26)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to United States Magistrate Judge issued by Judge R. Brooke Jackson on August 1, 2012. (Docket No. 13).

**PLAINTIFF'S ALLEGATIONS**

The pro se incarcerated plaintiff, John H. Cook, alleges the following in his Prisoner Complaint brought pursuant to 42 U.S.C. § 1983. (Docket No. 1). Defendant Darlene McInnis was and is an instructor with the K-9 Program for the Colorado Department of Corrections at Sterling Correctional Facility in which inmates train and discipline dogs. That Program has strict rules, but some staff members show favoritism to several inmates who are allowed to break the rules. One such rule is that the dogs are to be on a leash at all times, even when being allowed to run and play. Some

inmates could get away with removing the leash, and defendant knew about such infractions. Another rule is that if a dog bites someone, the dog is to be quarantined for ten days and then terminated from the program.

On April 11, 2011, plaintiff was assigned to that K-9 Program and was sitting outside on the ground in an area where the inmates could exercise their dogs. Plaintiff had his back turned away from inmate Thomas Rush, who was also in the dog program. Rush's dog did not like plaintiff's young pup Mira. Someone loudly yelled at plaintiff, "Look out." As plaintiff turned to see what the problem was, a dog jumped over plaintiff's right shoulder and grabbed Mira by the back of her little neck. Plaintiff automatically grabbed the back of the neck of the attacking dog, attempting to grab the collar and leash, but the dog did not have any type of control on his neck, in violation of the Program rules. As plaintiff tried to get a hold on the dog's neck, the dog turned and bit down into plaintiff's index finger and left thumb, causing intense pain and blood to squirt profusely. Plaintiff was seen by the medical department.

Defendant was immediately given notice of the incident but did not order the attacking dog to be quarantined until defendant was ordered to do so by her supervisor, Lt. Virginia Page. Nevertheless, defendant allowed inmate Rush to let the dog stay on his bed and run loose in the living area.

Defendant acted intentionally and knowingly in total disregard for plaintiff's constitutional rights. She allowed the dog to run free and knew that the dog was a biter.

Upon defendant's personal orders, plaintiff was fired from the K-9 Program because defendant knew she was to blame for plaintiff having been bitten by that dog. Defendant knew the dog belonged to another CDOC employee who worked at SCF.

3

Because defendant refused to follow the concrete rules, a year later plaintiff still suffers daily with pain in his hand.

Based upon the above, plaintiff brings the following three claims.  Claim One: Cruel and unusual punishment.  If it were not for defendant's intentional and personal actions, plaintiff would not have suffered and continue to suffer personal pain.  Claim Two: Denial of Due Process.  Plaintiff was terminated from his job in the K-9 Program because the defendant intentionally allowed her favoritism to supercede the rules.  That termination was without any evidence that plaintiff violated the rules.  Claim Three: Denied Equality.  Plaintiff wants all of his back pay and his job back.

Plaintiff seeks $10,000 in compensatory damages and $40,000 in punitive damages.

**DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the Defendant's Motion to Dismiss (Docket No. 26) in which she seeks dismissal of the Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) plaintiff's official capacity damages claims are barred by the Eleventh Amendment; (2) defendant is entitled to qualified immunity because (a) plaintiff fails to state an Eighth Amendment claim, due process claim, and an equal protection claim, and (b) plaintiff fails to allege a violation of clearly-established law; and (3) plaintiff fails to state a claim for damages. Plaintiff filed a Response to the defendant's motion. (Docket No. 30).  Defendant filed a Reply (Docket No. 35), and without leave of court, plaintiff filed a Sur-reply (Docket No. 39).  The court has carefully considered these motions papers and has also considered the applicable Federal Rules of Civil Procedure and case law.  In addition, the court has

taken judicial notice of the court file.  The court now being fully informed, makes the

following findings, conclusions of law, and recommendation.

   Rule 12(b)(1):

   empowers a court to dismiss a Complaint for "lack of jurisdiction over the
   subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction,
   federal courts may only adjudicate cases that the Constitution and
   Congress have granted them authority to hear.  See U.S. CONST. art. III,
   § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes
   conferring jurisdiction on federal courts are to be strictly construed.  *See F
   & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule
   12(b)(1) motion to dismiss "must be determined from the allegations of
   fact in the complaint, without regard to mere conclusionary allegations of
   jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).
   The burden of establishing subject matter jurisdiction is on the party
   asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d
   906, 909 (10th Cir. 1974).

      Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.
   First, if a party attacks the facial sufficiency of the complaint, the court
   must accept the allegations of the complaint as true.  *See Holt v. United
   States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks
   the factual assertions regarding subject matter jurisdiction through
   affidavits and other documents, the court may make its own findings of
   fact.  *See id.* at 1003.  A court's consideration of evidence outside the
   pleadings will not convert the motion to dismiss to a motion for summary
   judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

   Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

5

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'"  Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Iqbal, 129 S. Ct. at 1949)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Official Capacity.

Defendant first asserts that she is immune from liability for monetary damages in her official capacity. The Prisoner Complaint does not indicate whether the defendant is being sued in her official and/or individual capacity. It is well established that "neither a

7

State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994). Therefore, to the extent that the plaintiff's § 1983 claims against the defendant are against her in her official capacity for monetary damages, such relief is barred by the Eleventh Amendment, and any such claim should be dismissed with prejudice.

Qualified Immunity.

Defendant asserts that she is immune from liability for plaintiff's monetary claims against her in her individual capacity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009). It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not

8

be subject to liability or, indeed, even the burdens of litigation." Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendant['s] actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendant['s] position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. at 236. In this case, plaintiff has failed to meet his burden of showing the first prong of the analysis with respect to all three of his claims.

Claim One - Eighth Amendment - Cruel and Unusual Punishment. This court agrees with the defendant that the plaintiff has failed to state an Eighth Amendment claim, whether he is raising a conditions of confinement claim or a claim that defendant failed to protect him. The Supreme Court has extended the Eighth Amendment's reach beyond punishments that are "physically barbarous." Rhodes v. Chapman, 452 U.S. 337, 345 (1981). When a punishment is not alleged to be "physically barbarous," there must have been unnecessary and wanton infliction of pain. Id. at 346. The "unnecessary and wanton" standard includes punishments that are "so totally without penological justification" as to result in the "gratuitous infliction of suffering." Gregg v. Georgia, 428 U.S. 153, 183 (1976). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

9

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Id.

Furthermore, in conditions-of-confinement cases, the prisoner much establish "deliberate indifference" to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "The Eight Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id.

Here, plaintiff's allegations fail to allege a constitutional violation under these theories. He merely alleges that another inmate's dog that was also in the K-9 Program for training and discipline was off its leash, contrary to Program policy, approached and engaged in a confrontation with the plaintiff's dog, and plaintiff got bitten when he grabbed the other dog. The dog did not come and attack plaintiff; it snapped at plaintiff's dog and plaintiff stuck his hand into the fray. As noted by the defendant, plaintiff does not allege that the defendant personally let the first dog off the leash or that the dog had previously attacked plaintiff or his dog. Plaintiff merely alleges that the second dog was a "biter." He does not support this conclusory allegation with any factual allegations. Moreover, he does not allege that the defendant actually knew before plaintiff was bitten that plaintiff's safety was in jeopardy but failed to take

reasonable precautions with disregard of an excessive risk to plaintiff's health and safety. At best, plaintiff alleges no more than negligence, inadvertence, or an ordinary lack of due care for his interest or safety rather than obduracy and wantonness and thus fails to state a claim the rises to the level of a constitutional violation.

Claim Two. Due Process. In Claim Two, plaintiff merely asserts that he was denied due process as a result of being terminated from his job in the K-9 Program, without any evidence that he violated the rules, because the defendant intentionally allowed her favoritism to supercede the rules. "The Constitution does not create a property or liberty interest in prison employment." Ingram v. Papalia, 804 F.2d 595, 596 (10th cir. 1986). Furthermore, with respect to prison inmates, "Colorado law does not create a protected property or liberty interest to either employment in any particular job or continued employment in any particular job." Id. at 597. Therefore, plaintiff "has no entitlement to protection under the due process clause." Id. See Milligan v. Archuleta, 659 F.3d 1294, 1296 (10th cir. 2011) (the fact that an inmate does not have a constitutional right to employment bars him from succeeding on a procedural due process claim) ; Cooper v. Belcher, 2010 WL 3359709, at *14 (D. Colo. Aug. 25, 2010) (inmate's Fourteenth Amendment claim failed to the extent it was premised on his termination from prison employment).

Claim Three. Equal Protection. In his third claim for relief, plaintiff merely asserts that he was denied equality. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The Fourteenth Amendment's equal protection guarantee "is

11

essentially a directive that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998). "[T]o state an equal protection claim where no suspect class is involved," plaintiff must not only show that he is similarly situated to other inmates who were treated differently, but he must also show that "the difference in treatment bears no rational relation to legitimate penological interests." Deberry v. Davis, 2011 WL 1258509, at *4 (D. Colo. Mar. 31, 2011) (citing Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir. 2006)).

Here, plaintiff's bare equal protection claim is too conclusory to permit a proper legal analysis. Straley v. Utah Bd. of Pardons, 582 F.3d 1208, 1215 (10th Cir. 2009) (citing Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995) (stating that complaint's allegations were "too conclusory" to allow for complete equal protection analysis)). "[E]ven pro se litigants must do more than make mere conclusory statements regarding constitutional claims." Brown, 63 F.3d at 972. Therefore, plaintiff has failed to state a plausible equal protection claim.

In sum, plaintiff has failed to state a claim that the defendant's actions violated a constitutional or statutory right. Therefore, defendant is entitled to qualified immunity on all three of plaintiff's claims with respect to monetary damages. To the extent that the plaintiff is seeking injunctive relief, namely, reinstatement in the K-9 program, the Prisoner Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff has failed to state a claim upon which relief may be granted.

12

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendant's Motion to Dismiss (Docket No. 26) be granted. If this recommendation is accepted, then it is further

**RECOMMENDED** that the court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from such order would not be taken in good faith and therefore *in forma pauperis* status be denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438 (1962). If such a certification is made, and the plaintiff files a notice of appeal, he would then be required to pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

13

| | |
|---|---|
| Date: February 27, 2013<br>Denver, Colorado | s/ Michael J. Watanabe<br>Michael J. Watanabe<br>United States Magistrate Judge |